# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

THE OLGA J. NOWAK
IRREVOCABLE TRUST,

    Plaintiff,

        v.

VOYA FINANCIAL, INC. and
SECURITY LIFE OF DENVER
INSURANCE COMPANY,

    Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)

C.A. No. 2021-0830-FW

Submitted: March 9, 2022
Decided: June 30, 2022

*Upon Defendants Security Life of Denver's and Voya Financial, Inc.'s Motion to Dismiss,*
**GRANTED.**

## <u>MEMORANDUM OPINION AND ORDER</u>

R. Bruce McNew, Esquire, COOCH AND TAYLOR, P.A., The Nemours Building, 1007 N. Orange Street, Ste. 1120, P.O. Box 1680, Wilmington, Delaware 19899, Attorney for Plaintiff The Olga J. Nowak Irrevocable Trust.

Tiffany Geyer Lydon, Esquire, ASHBY & GEDDES, 500 Delaware Avenue, 8th Floor, P.O. Box 1150, Wilmington, Delaware 19899, Attorney for Defendants Voya Financial, Inc. and Security Life of Denver Insurance Company.

David T. McDowell, Esquire, Robert P. Debelak, Esquire, Avi Moshenberg, Esquire, McDOWELL & HEATHERINGTON LLP, 1001 Fannin, Suite 2700, Houston, Texas 77002, Of Counsel for Defendants Voya Financial, Inc. and Security Life of Denver Insurance Company

**WHARTON, J.**[1]

---

[1] Sitting as Vice Chancellor on the Court of Chancery by special designation pursuant to Del. Const. Art. IV, § 13(2).

# I. INTRODUCTION

Olga Nowak turned 100 on August 23, 2015. That milestone is significant beyond reflecting her remarkable longevity. More precisely, under the insurance policy at issue here she reached an "attained age" of 100 on February 21, 2016. She died on June 29, 2016. Had she died a few months earlier, before she reached the "attained age of" 100, the parties would have been spared the protracted litigation in which they are now engaged.

Olga Nowak's unusually long life and the timing of her passing unfortunately generated litigation that The Olga J. Nowak Irrevocable Trust ("Trust") brought first in the Superior Court, then to the Delaware Supreme Court on appeal, and now in the Court of Chancery. In the Superior Court, the Trust sued Security Life of Denver Insurance Company ("SLD") and SLD's parent company, Voya Financial, Inc. ("Voya") (collectively "Defendants"). It brought that case on May 18, 2017 alleging breach of contract related claims and contract reformation claims. The Superior Court granted summary judgment to the Defendants. The Superior Court held that the Defendants did not breach the insurance contract with the Trust and that it was without jurisdiction to resolve the equitable claims. The Delaware Supreme Court affirmed. In the interim, the Superior Court granted the Trust's request to transfer its equitable claims – the contract reformation claims – to this Court. In its Complaint here, the Trust has added two new equitable fraud claims to the claims

3

transferred from Superior Court. The Defendants move to dismiss citing an alleged lack on standing to bring the suit by the Trust, laches, and a failure to allege certain necessary elements of their claims. After carefully considering the Motion to Dismiss ("Motion"), the Court is satisfied that it must be granted. All of the Trust's claims are barred by laches. Because the Court finds all of the Trust's claims are time-barred, it need not address the Defendants' theory that the Complaint fails to allege fundamental elements of its claims. Indeed, even if the Court granted the Motion on that basis, it would likely allow leave to amend the Complaint, leaving the Court still to resolve the laches issue. Thus, a decision based on laches provides the parties some measure of finality.

## II.    FACTUAL AND PROCEDURAL HISTORY

In the Superior Court action, the Trust alleged Breach of Contract, Bad Faith Breach of Contract, Violation of Delaware Consumer Fraud Act ("DCFA"), Reformation Based Upon Mutual Mistake, Reformation Based Upon Mistake Coupled with Inequitable Conduct, Unconscionability, and Unjust Enrichment.[2] The Breach of Contract claim—the primary claim—alleged that SLD breached the Insurance Policy (the "Policy") by failing to pay the outstanding amount due under

---

[2] Second Amend. Compl. ("SAC"), Super. Ct. D.I. 55. Due to a typographical error the SAC was incorrectly captioned "Amended Complaint."

4

the Policy after the insured's death.[3]  SLD and Voya denied the Trust's allegations and asserted numerous affirmative defenses.[4]

On November 30, 2020, the Superior Court granted summary judgment against the Trust, dismissing all its claims.[5]  In particular, the Superior Court dismissed three claims - Reformation Based Upon Mutual Mistake, Reformation Based Upon Mistake Coupled with Inequitable Conduct, and Breach of Reformed Contract because it determined that, as a court of law, it lacked the power to provide the equitable relief requested by the three contract reformation counts.[6]

The Trust appealed to the Delaware Supreme Court.  While the case was before that Court, the Trust filed a Written Election of Transfer Pursuant to 10 *Del. C.* § 1902 on January 20, 2021.[7]  In that document, the Trust stated that it elected to have the three claims the Superior Court had found to request equitable relief transferred to the Court of Chancery.[8]  In a brief Order, on July 7, 2021, the Delaware

---

[3] *Id.*

[4] Defs.' Ans. to Pl.'s Second Am. Compl., Super. Ct. D.I. 60 & D.I. 61.

[5] *Olga Nowak Irrevocable Trust v. Voya Financial, Inc. et al.,* 2020 WL 7181368 (Del. Super. Nov. 30, 2020).

[6] *Id.*

[7] Super. Ct. D.I. 208.

[8] *Id.*

Supreme Court affirmed the Superior Court "on the basis of and for the reasons stated in its memorandum opinion and order dated November 30, 2020."[9]  On July 16th, the Trust moved for an order of transfer.[10]  SLD and Voya opposed transfer.[11] On August 20, 2021, the Superior Court ordered the three claims it had determined requested equitable relief it was unable to provide – Reformation Based on Mutual Mistake, Reformation Based on Mistake Coupled with Inequitable Conduct, and Breach of Reformed Contract – transferred to this Court.[12]

The Trust's Complaint here sets out five claims for relief – the three transferred claims (Counts I, II, and V respectively) – plus two new claims – Equitable and Constructive Fraud (Count III) and Aiding and Abetting Equitable or Constructive Fraud (Count IV).[13]  SLD and Voya have moved to dismiss.[14]  Briefing is complete, and the Court held argument on March 9, 2022.

---

[9] *Olga Nowak Irrevocable Trust v. Voya Financial, Inc.,* 2021 WL 2815225 at *1 (Del. July 7., 2021).

[10] Super. Ct. D.I. 209.

[11] Super. Ct. D.I. 211.

[12] *The Olga J. Nowak Irrevocable Trust v. Voya Financial, Inc.,* 2021 WL 3700815 (Del. Super. Ct. Aug. 20, 2021)

[13] Compl., D.I. 1.

[14] Defs.' Mot. to Dismiss, D.I. 10.

The basic facts underlying the litigation as developed by the parties in the

Superior Court are set out as follows in that court's opinion on summary judgment:

> The Trust, through its trustee Robert J. Nowak ("Mr. Nowak" or the "Trustee"), purchased the Policy to insure the life of his mother, Olga J. Nowak ("Mrs. Nowak" or the "insured"), with the assistance of insurance brokers Mark Wilcock ("Wilcock") and Ed Wetherell (Wetherell).[15] One of Wilcock's then-existing clients referred Mr. Nowak to Wilcock. Wilcock provided financial advice to Mr. Nowak who also sought advice from Marlin Anderson, a Certified Public Accountant, and a financial analytics firm called Legacy Analytics.[16]
>
> On August 2, 1999, after reviewing multiple insurance contracts from various insurance companies, Mr. Nowak, as Trustee, signed an application for the Policy issued by Southland Life Insurance Company ("Southland").[17] Both Wilcock and Wetherell facilitated the issuance of the Policy by Southland to the Trust.[18] The Policy, signed by an executive officer of Southland at that time, was issued from Southland's Georgia office and dated February 21, 1999.[19] Mr. Nowak did not fully read

---

[15] SAC, at ¶ 3, Super. Ct. D.I. 55.

[16] App. to Defs.' Mots. for Summ. J., at 330 (Trans. of Mr. Nowak's 2/3/2020 Dep.), Super. Ct. D.I. 154.

[17] *Id.* at 325; *see also id* at 767-772. (The Application for Life Insurance was witnessed and signed in McLean, Virginia.).

[18] Defs.' Mot. for Summ. J. on Aff. Def. of Limitations at 1, Super. Ct. D.I. 154.

[19] Policy at 1.

the Policy before signing it.[20] In 2004, Southland merged into SLD, a wholly owned subsidiary of Internationale-Nederland Group of The Hague ("ING"), and in 2014, ING was rebranded as Voya.[21]

After the delivery of the Policy in 1999, the Trust received periodic illustrations from Southland until Southland's merger into SLD and thereafter received periodic illustrations from SLD. These illustrations purport to show the value of the Death Benefit—the benefit payable to the Trust at the insured's death—at specific age intervals. Initially, the illustrations reflect a Death Benefit of $4 million available at age 100.[22] Later, however, some illustrations provided from 2004 to 2009, reflect a $4 million Death Benefit available until age 110. Defendants explain the difference in the illustrations as being a result of an administration system conversion when Southland merged with SLD in 2004.[23] The Trust does not accept this explanation. In the 2010 illustration, SLD corrected this purported error.[24]

In 2010, Mr. Nowak discussed the Policy with another financial advisor and came to the understanding that the Trust would receive the Death Benefit of $4 million if his mother died before attained age 100 and the Surrender Value if his mother passed away at attained age 100 or thereafter.[25] Mr. Nowak contacted Wilcock and

---

[20] App. to Defs.' Mots. for Summ. J., at 339-340 (Mr. Nowak's 2/3/2020 Dep.), Super. Ct. D.I. 154.

[21] SAC, at ¶ 2, Super. Ct. D.I. 55.

[22] App. to Defs.' Mots. For Summ. J. at 474-505, Super. Ct. D.I. 154.

[23] *Id.* at 188-195 (Fisk Dep.).
[24] *Id.*

[25] *Id.* at 344-345 (Feb. 3, 2020 Mr. Nowak Dep.).

eventually SLD for clarification. Although Wilcock thought differently, SLD confirmed Mr. Nowak's understanding that the Trust would receive a Death Benefit of $4 million if his mother died before attained age 100 and the Surrender Value if she died at attained age 100 or thereafter. In 2011, after consulting with his other financial advisor, Mr. Nowak contacted Wilcock and sought to reduce the premiums on the Policy to the minimum amount necessary to keep the Policy intact.

The Policy terms initially required annual premiums of roughly $247,740. The Trust has paid total premiums of $3,222,760. In 2011, prior to adjusting the annual premium payments, the Surrender Value was $1,268,102.43. Because Mr. Nowak reduced the Trust's annual premium payments, the Surrender Value decreased accordingly and now amounts to $336,242.[26]

While it tracks much of the Amended Complaint in the Superior Court, at times verbatim, the Complaint in this Court expands upon the Amended Complaint and the above factual summary. In particular it highlights in some detail allegations that both Wilcock and Wetherell as agents of the Defendants and fiduciaries of the Trust, shared Mr. Nowak's understanding that the Death Benefit of $4 million would be paid without regard to whether Mrs. Nowak lived beyond 100.[27]

---

[26] *The Olga Nowak Irrevocable Trust v. Voya Financial,* 2020 WL 7181368, at *2 (Del. Super. Ct. Nov. 30, 2020).

[27] *See, e.g.,* Compl. ¶¶ 3, 6, 9, 19, 20, 22, 25, 26, and 50-59, D.I. 1.

9

## THE PARTIES' CONTENTIONS

In their motion, SLD and Voya argue for dismissal based on three rationales – a jurisdictional defect due to lack of standing, laches, and failure of the Trust to plead fundamental elements of its claims.[28] First, the Defendants argue that the Trust lacks standing. Their thinking is that the Trust, not being a statutory trust under Delaware law, is not an independent legal entity with the capacity to sue. Only its Trustee can assert claims on its behalf.[29] Next they argue that the Trust unreasonably delayed asserting its equitable claims, warranting dismissal under the doctrine of laches. In their view, the trust cannot justify its delay in asserting its contract reformation claims until May 2017 (when it filed the Superior Court action), roughly seven years after the Trust learned that the Policy supposedly contained a mistake and 18 years after it had constructive knowledge of a claimed mistake.[30] Further, the equitable fraud claim and the aiding and abetting equitable fraud claim were delayed even longer, having been brought for the first time in the Trust's Complaint in this Court.[31] Lastly, the Defendants assert that the Trust has failed to plead

---

[28] Defs.' Mot. to Dismiss, D.I. 10.

[29] *Id*., at 11.

[30] *Id*., at 12.

[31] *Id.*

10

fundamental elements of its claims: (1) no grounds exists to apply Delaware law to the equitable claims; (2) the equitable fraud claims fail because the Defendants had no special relationship with the Trust and the Trust had adequate remedies at law; and (3) the prior agreement necessary for reformation was not reflected in the contract because there was no prior agreement.[32]

The Trust opposes the motion. First, it argues that the motion did not properly present the Defendants' facts and arguments in compliance with Chancery Rule 171, thereby depriving it of an opportunity to understand the facts and legal authorities on which the Defendants rely and to assess whether the Defendants have met their burden to support the motion.[33] More substantively, the Trust contends: (1) the law of the case establishes that the Trust has standing, and the Trust also has standing as the real party in interest;[34] (2) Delaware law applies to all of its claims;[35] (3) the claims accrued no earlier than Mrs. Nowak's death which was less than three years before the Superior Court action was commenced;[36] (4) under Chancery Rule 15(e),

---

[32] *Id*., at 21-29.

[33] Pl.'s Ans. Br., at 30-31, D.I. 12.

[34] *Id*., at 35-37.

[35] *Id.,* at 37-39.

[36] *Id.,* at 40-44.

the timeliness of the equitable fraud claims relates back to the Superior Court complaint;[37] (5) even if any claim accrued earlier than Mrs. Nowak's death, laches was tolled until the Defendants failed to make payment upon her death;[38] (6) the law of the case does not bar any count of the Complaint;[39] (7) the equitable fraud claims are properly pled;[40] and (8) the contract reformation claims are properly pled.[41]

Underlying the parties' disputes about standing, laches, and pleading sufficiency is a disagreement about the sources of information to which the Court properly may look in order to resolve those disputes. The Defendants would like the Court to consider documents referenced in the Complaint and take judicial notice of matters not subject to reasonable dispute.[42] In practical terms, the Defendants ask the Court to rely on facts in the Superior Court's opinion on summary judgment and consider it the law of the case.[43] Not surprisingly, the Trust takes a somewhat

---

[37] *Id.,* at 44.

[38] *Id*., at 44-48.

[39] *Id*., at 48-49.

[40] *Id*., at 49-53.

[41] *Id*., at 54-56.

[42] Defs.' Op. Br., at 4, D.I. 10.

[43] *Id*., at 4-5.

different position. It emphasizes the language of the Complaint based on the Trustee's sworn allegations. The Trust allows that the Court may consider documents integral to the claims, but only to police the complaint for indisputable misquotations or mischaracterizations of essential documents.[44]

## III. STANDARD AND SCOPE OF REVIEW

The Defendants have moved to dismiss under Rules 12(b)(1) and 12(b)(6). A motion to dismiss under Rule 12(b)(1) is addressed to the subject matter jurisdiction of the court, which the plaintiff has the burden of establishing.[45] "'Stranding is a threshold jurisdictional requirement.'"[46] In deciding whether the plaintiff has met that burden, the Court is free to consider facts not alleged in the complaint and is not limited to accepting plaintiff's factual allegations as true.[47]

When considering a motion to dismiss for failure to state a claim under Rule 12(b)(6), the Court (i) accepts all well pleaded allegations as true; (ii) credits vague allegations if they give the opposing party notice of the claim, and (iii) draws all

---

[44] Pl.'s Ans. Br., at 1-2, D.I. 12.

[45] Ct. Ch. R. 12(b)(1); *Lewis v. AimCo Props, L.P.,* 2015 WL 557995, at *2 (Del. Ch. Feb. 10, 2015).

[46] *Microphage Theraputics, Inc. v. Goldberg,* 2021 WL 2585429, at *4 (Del. Ch. Jun., 23, 2021)(quoting *Hall v. Coupe*, 2016 WL 3094406, at *3 (Del. Ch. May 25, 2016)).

[47] *Id.*

reasonable inferences in favor of the plaintiff.[48]   But, the Court need not "accept conclusory allegations unsupported by specific facts or…draw unreasonable inferences in favor of the non-moving party."[49]   "[T]he governing pleading standard in Delaware to survive a motion to dismiss is reasonable 'conceivability.'"[50] Dismissal is inappropriate "unless the plaintiff would not be entitled to recover under any reasonably conceivable set of circumstances."[51]

## IV.   DISCUSSION

Before discussing the dispositive issue, the Court pauses briefly to dispose of four preliminary matters.  The first is the Trust's contention that the Motion should be denied because it failed to properly present the Defendants' facts and arguments in compliance with Chancery Rule 171.[52]   As a result, the Trust argues that it has been deprived of an opportunity to understand the Defendants' legal contentions, the authorities upon which they rely, and to assess whether they have met their legal

---

[48] Ct. Ch. R. 12(b)(6); *Cent. Mortg. Co. v. Morgan Stanley Mortg. Cap. Hldgs. LLC,* 27 A.3d 531, 535 (Del. 2011).

[49] *Price v. E.I. DuPont de Nemours & Co., Inc.,* 26 A.3d 162, 166 (Del. 2011), *overruled on other grounds by Ramsey v. Ga. S. Univ. Advanced Dev. Ctr.,* 189 A.3d 1227 (Del. 2018).

[50] *Cent. Mtg.,* at 537.

[51] *Id.,* at 535.

[52] Pl.'s Ans. Br. at 30-31, D. I. 12.

burden to support the Motion.[53]  It also argues that the Defendants have improperly withheld material for their reply brief.[54]  As to the former, counsel for the Trust is too modest.  Throughout the litigation counsel has demonstrated an impressive command of the facts and the law in effectively representing the Trust.  That command was reflected in the Answering Brief and at argument.  There is no demonstrated reason to suspect that the Trust was impaired in any way by the construction of the Defendants' Opening Brief.  As to the latter, the records belies the assertion.

The second matter is the Defendants' argument that the Trust lacks standing to sue.  After being content to litigate against the Trust in the Superior Court, the Defendants apparently have realized for the first time in this Court that the Trust lacked standing to sue them.  The Court declines to be drawn into that argument.  Even if the Court were to agree with the Defendants, that agreement would only bring them temporary relief.  In that event, the Court simply would grant the Trust leave to amend the Complaint to substitute the Trustee.  The Court deems it more pragmatic to resolve an issue that is dispositive.

---

[53] *Id.*

[54] *Id.* at 33-35.

The third matter is the Defendants' claim that there is no basis to invoke Delaware law.[55]  Aside from the fact that the Defendants have applied Delaware law to all of their other arguments, which the Court takes as a concession to the applicability of Delaware law, the Policy insured the life of a Delawarean, Mrs. Nowak, making Delaware law applicable.[56]

The fourth matter deals with the scope of the record and the law of the case. In that regard. the Court has relied only on the Complaint and the Superior Court's determination, as affirmed by the Delaware Supreme Court, that the Defendants did not breach the written Policy in reaching its decision.

### A.    The Laches Standard.

The Court first addresses the issue of laches because it is dispositive. Laches is the equitable analog of a statute of limitations in a law court.  It is rooted in the maxim that "equity aids the vigilant, not those who slumber on their rights."[57] Equity, being equity, does not impose a hard and fast rule as to what constitutes laches, preferring to define it generally as an unreasonable delay by the plaintiff in bringing suit after the plaintiff has learned of the infringement of his rights, thereby

---

[55] Defs.' Op. Br., at 21, D.I. 12.

[56] *Clark Equip. Co. v. Liberty Mutual*, 1994 WL 466325 (Del. Super. 1994).

[57] *Reid v. Spazio*, 970 A.2d 176, 182 (Del. 2008).

16

resulting in material prejudice to the defendant.[58]  That definition broadly sets out

the elements of laches: (1) knowledge buy the claimant; (2) unreasonable delay in

bringing the claim; and (3) resulting prejudice to the defendant.[59]

While both laches and statutes limitations function to bar untimely lawsuits,

the limitations which set bright line time constraints on bringing claims in a court of

law are not controlling in equity.[60]  "A court of equity moves upon considerations of

conscience, good faith, and reasonable diligence.  Knowledge and unreasonable

delay are essential elements of the defense of laches…What constitutes unreasonable

delay is a question of fact largely dependent upon the particular circumstances."[61]

Nevertheless, although not determinative, statutes of limitations serve to limit the

outermost time when a claim may proceed and be timely.[62]  Thus, absent tolling, a

claim is barred if the analogous statute of limitations has passed.[63]  Further, "a filing

after the expiration of the analogous limitations period is presumptively an

---

[58] *Id.* (citing *Homestone, Inc. v Tafeen*, 888 A.2d 204, 210 (Del. 2005).

[59] *Id.,* at 183.

[60] *Adams v. Jankauskas*, 452 A.2d 148, 157 (Del. 1982).

[61] *Whittington v. Dragon Group, L.L.C.,* 991 A.2d 1, 9 (Del. 2009).

[62] *Sunrise Ventures, LLC v. Rehoboth Canal Ventures*, LLC, 2010 WL 363845 WL, at *6 (Del. Ch. Jan. 27, 2010).

[63] *Id.*

unreasonable delay for purposes of laches … and prejudice to defendants is thus presumed."[64]

## B.    The Facts Alleged in the Complaint.

The Court analyzes the timeliness of this action according to the facts alleged in the Complaint. The Complaint alleges that the Trust purchased the Policy from Defendants' predecessor in 1999 for the purpose of estate planning for Mrs. Nowak with the expectation that the $4 million Death Benefit would be paid upon her death.[65] Over the next decade, Defendants provided the Trust with illustrations reflecting that that $4 million Death Benefit would be paid through Mrs. Nowak reaching the age of 110.[66] During that period, the Trust paid annual premiums totaling more than $3 million to ensure that the Policy remained in effect.[67] Approximately 12 years after the purchase of the Policy, a financial advisor informed the Trustee that certain trusts and policies terminated at age 100, and that the Trustee should recheck the Policy to assure that the Trust did not terminate at

---

[64] *Kim v. Coupang, LLC,* 2021 WL 3671136, at *3, (Del. Ch. Aug. 19, 2021).

[65] Compl., at ¶¶ 2, 3, D.I. 1.

[66] *Id.*, at ¶ 3, 5.

[67] *Id,* at ¶ 5.

100.[68] In 2010, after receiving a differently formatted illustration, the Trustee read the Policy and discovered a clause "which might be contrary to the understanding of the Nowak Trust, Wilcock, and Defendants."[69] Upon checking with Defendants' agent, the Trustee was assured that clause would not terminate the $4 million Death Benefit at age 100.[70] In 2011, the Defendants provided an illustration showing that the Death Benefit terminated at age 100 and thereafter the Policy would pay only the cash Surrender Value.[71] In various communications with Wilcock, the Trustee was assured that the 2011 illustration was a mistake, and that it was Wilcock's understanding that the full Death Benefit would continue until Mrs. Nowak's death.[72] At that time, Mrs. Nowak was 94 years old and the Trustee made the prudential decision to conserve the Trust's assets, keep the policy in force with the minimum necessary payments, and forgo filing a legal action that might never become necessary.[73] Mrs. Nowak died on June 29, 2016, only four months after she

---

[68] *Id.*, at ¶ 6.

[69] *Id.*

[70] *Id.*

[71] *Id.*, at ¶ 7.

[72] *Id.*, at ¶ 9.

[73] *Id.*, at ¶¶ 9,10.

reached her attained age of 100 under the Policy.[74]  The Defendants have refused to pay the $4 million Death Benefit and maintain that the Trust is entitled only to the cash Surrender Value of $336,242.[75]

### C.    The Analogous Statute of Limitations is Three Years.

The Defendants consider the analogous statute of limitations to be three years for all claims.[76]  Trust appears to agree as to the breach of the reformed contract,[77] but apparently is agnostic as to the fraud-based claims, preferring instead to argue that those claims did not accrue until the Defendants refused payment.[78]  It acknowledges that the right to reform a contract is subject to a defense of laches, but denies that it is subject to an analogous statute of limitations, stating that there is no analogous statute of limitations for that claim.[79]  Instead, laches requires a showing

---

[74] *Id.,* at ❡ 11.

[75] *Id.*

[76] Defs.' Op. Br., at 13, 17, D.I. 10.

[77] Pl.'s Ans. Br. at 40-41 ("Where a 'claim sounds in contract…the analogous statute of limitations is 10 *Del. C.* § 8106, under which a breach of contract action must be brought within three years from the date the cause of action accrued.' *Levy v. Brownstone Asset Management, LP*, 76 A.3d 764, 768 (Del. 2013).'", D.I. 12.

[78] *Id.*, at 43.

[79] *Id.,* at 41.

20

that the delay caused the Defendants to suffer a detrimental change in position.[80] But then, the Trust states, "In effect, because reformation either applies to an ongoing contract or to a claim for breach of the reformed contract, absent some prejudicial delay, laches bars reformation claims only if it would bar a claim for the breach of the reformed contract."[81]

The Defendants have the better argument. If the Court follows the Trust's reasoning, it seems to be saying that there is no analogous statute of limitations for reformation claims, which require prejudicial delay for laches to bar them, but, absent prejudicial delay, laches would bar a reformation claim if it would bar a breach of a reformed contract claim for which the analogous statute of limitations is three years. That statement either is a long way of saying the Trust agrees that the analogous statute of limitations is three years, or the Trust's position is beyond the Court's ability to comprehend. Either way, the Court takes three years as an analogous limitations period for all claims.[82]

### D.     The Accrual Date is no Later than 2011.

---

[80] *Id.*

[81] *Id.*, at 41 (citing *Interim Healthcare, Inc. v. Sherion Corp.,* 2003 WL 22902879, at *6 (Del. Ch. 2003).

[82] *See, Nationwide Mut. Ins. Co. v. Starr,* 575 A.2d 1083, 1088-89 (Del. 1990); *Sunrise Ventures, LLC,* at*6-7.

The parties real disagreement centers on when the Trust's claims accrued. The Defendants set the accrual date for constructive notice at the date the Policy went into effect in 1999 and for actual notice in 2011 when the Trust first discovered a "problem" with the Policy's language.[83] For the Trust, the accrual date is no earlier that Mrs. Nowak's death when the Trust alleges that the Defendants refused to pay the Trust $4 million.[84]

In one sense, the accrual date is academic. The Court need not parse between 1999 and 2011. It is enough to say the accrual date for the reformation based claims is no later than 2011, and decidedly not 2016. All of the facts necessary to initiate a contract reformation suit, as alleged in the Complaint, were known to the Trustee by 2011 at the latest.

To the extent there was a pre-existing agreement as alleged between the Trustee and the Defendants, through the Defendants' representatives Wilcock and Wetherell, to provide a Death Benefit of $4 million to the Trust without regard to Mrs. Nowak's age when she died, that agreement was not in accord with the written Policy. As the Superior Court found after reciting the language of the Policy: "The contractual obligation is unambiguous. If the insured died before attained age 100,

---

[83] Defs.' Op. Br., at 16, D.I. 10.

[84] Pl.'s Ans. Br., at 40-43, D.I. 12.

Defendants were obligated to pay a Death Benefit of $4 million to the Trust. However, if the insured died after attained age 100, the Defendants were obligated to pay only the Surrender Value to the Trust."[85]   This contradiction between the parties' alleged understanding of the Policy and its terms after it was reduced to writing should have been apparent to the Trustee in 1999.[86]  Nonetheless, despite the intervening incorrect illustrations and Wilcock's assurances, after "rereading" the Policy and receiving other corrected illustrations, it was apparent to the Trustee that the "Defendants intended to interpret and rely upon certain language in the Insurance Policy, which contradicted the parties' understanding, prior to illustrations, and other language in the Insurance Policy, to assert that the $4 million death benefit expired at age 100 and instead would only be the cash surrender value."[87]  A that point, the Trustee considered litigation, but elected not to pursue it in order to conserve Trust assets, considering that litigation might be unnecessary if Mrs. Nowak died before she turned 100.[88]

---

[85] *The Olga J. Nowak Irrevocable Trust,* at *6.

[86] That it was not is attributed by the Defendants to the Trustee's failure to read the Policy in 1999.  The Trust maintains that the Trustee never stated that he did not read the Policy when it was delivered.  Pl.'s Ans. Br., at 47, D.I. 12.

[87] Compl., at ℙ 7, D.I. 1; Pl.'s Ans. Br., at 18-19, D.I. 12.

[88] Compl., at ℙ 8, D. I. 1.

The Trust takes the position that no cause of action arose until the Defendants refused payment. In other words, the Trust could not sue until the Defendants breached the contract.[89] Simply being on notice that the Defendants intended to breach the contract did not commence the statute of limitations for breach.[90] The Trust cites multiple cases for the uncontroversial position that a party cannot sue for breach of contract until that contract has been breached.[91] But, a breach of contract, as the contract was reduced to writing in the Policy, is not before this Court. That claim was resolved against the Trust in the Superior Court. What is before this Court is a contract *reformation* claim, paired with a claim for breach of that *reformed* contract.

A breach of contract claim and a contract reformation claim are not the same. The elements of a breach of contract claim are: (1) a contractual obligation; (2) a breach of that obligation; and (3) resulting damages.[92] There are two doctrines that allow for contract reformation – mutual mistake and unilateral mistake coupled with

---

[89] Pl.'s Ans. Br., at 41-42.

[90] *Id.*, at 42.

[91] *Id.*

[92] *The Olga J. Nowak Irrevocable Trust,* at *6 (quoting *Interim Healthcare, Inc. v. Spherion Corp.,* 884 A.2d 513, 548 (Del. Super. Ct. 2005).

knowledge and silence by the other party.[93]  Count I of the Complaint alleges the former and Count II the latter.[94]  "Regardless of which doctrine is used, the plaintiff must show by clear and convincing evidence that the parties came to a specific prior understanding that differed materially from the written agreement."[95]  Thus, in order to warrant reformation, the Trust must allege that it was mistaken about the terms of the Policy and that the Defendants shared that mistaken belief, or that the Defendants knew of the Trust's mistaken belief and remained silent.  Breach of a contract is not an element of a reformation claim.  Were it otherwise, no contract could be reformed before it was breached, an obviously inefficient and inequitable result.  Accordingly, The Trust's cause of action for reformation accrued no later than 2011 when the Trustee realized that the Defendants would not pay the $4 million Death Benefit if Mrs. Nowak died after attained age 100.[96]

### E.    Laches is not Tolled.

The determination that the contract reformation claim accrued in 2011 does not settle the issue, however.  The Trust argues that even if any claim accrued prior

---

[93] *Cerberus Intern., Ltd. v. Apollo Management, L.P.*, 794 A.2d 1141, 1151 (Del. 2002).

[94] Compl., at ¶¶ 42-49.

[95] *Cerberus,* at 1151-52.

[96] It is unnecessary to determine whether that actual accrual date is 1999 as the Defendants argue since laches would bar a claim accruing in 2011 as well.

Mrs. Nowak's death, laches was tolled until her death because: (1) the Defendants fraudulently concealed their intention to deny payment of the $4 million Death Benefit if Mrs. Nowak died after attained age 100; and (2) unusual conditions and circumstances preclude laches. Neither tolling argument is persuasive.

The Trust characterizes itself as blamelessly ignorant of the Defendant's true intentions. Having justifiably relied on Wilcock's expertise, the illustrations, and the language of the Policy, the Complaint alleges that after reasonable inquiry, it was "put off the trail of inquiry" by the Defendants so as to warrant tolling of laches until Mrs. Nowak's death.[97] But, the allegations of the Complaint make clear, notwithstanding Wilcock's prior comments, that by 2011 it was the Defendants' position that the Death Benefit converted to Surrender Value if Mrs. Nowak died after attained age 100. If fact the Complaint contained the bolded, capitalized, underlined heading;

**IN 2010, VOYA ALTERS ITS ILLUSTRATIONS, FIRST TERMINATIONG A CHART IN THE ILLUSTRATIONS AT AGE 100 AND THEN, IN 2011 INCLUDING A CHART ILLUSTRATING THAT, CONTRARY TO DEFENDANT'S REPRESENTATIONS OF THE PREVIOUS 10 YEARS, AND THE TEXTUAL LANGUAGE OF THE ILLUSTRATIONS, THE $4 MILLION DEATH BENEFIT TERMINATED AT AGE 100.[98]**

---

[97] Pl.'s Ans. Br., at 46-47, D.I. 12.

[98] Compl., at p. 17, D.I. 1.

26

The allegations in the paragraphs under that heading make it clear that the Defendants considered the Death Benefit after attained age 100 to be the Surrender Value, and not $4 million.[99] The Complaint contains no allegations that the Defendants, or anyone acting on their behalf, informed the Trustee after January 2011 that the Trust would be paid $4 million if Mrs. Nowak died after attained age 100. In fact, all of the allegations are to the contrary. Moreover, the Complaint alleges that the Trustee considered litigation in 2011, but for financial reasons and Mrs. Nowak's age – she was then 94 - elected to "see how events played out."[100] That decision arguably was a prudent one to make at the time, but it is not one made by someone from whom the true state of play was fraudulently concealed.[101]

The situation confronting the Trustee in 2011 – sue or "see how events played out" is not such an unusual condition or circumstance to preclude laches. Potential litigants face difficult choices every day when contemplating litigation. Balancing the costs of litigation with the advisability of suing is only one such consideration. While the Court in no way faults the choice made by the Trustee to "see how events

---

[99] *Id.,* at ₱₱ 27, 29. 30, and 34.

[100] *Id.*, at ₱ 30.

[101] *See, Sunrise Ventures, LLC,* at *6-7.

played out," the present litigation has an element of past posting to it.[102]  The bugle sounding the call to the post sounded in 2011 when the Trustee understood that the Defendants would pay only the Surrender Value if Mrs. Nowak lived beyond attained age 100.  Having seen how the race turned out, he is now placing his bet.  It is too late.

**F.      The Contract Reformation Claims are Barred by Laches.**

Two counts of the Complaint seek to reform the Policy.  Count I seeks to reform the Policy based on mutual mistake, while Count II seeks reformation based on unilateral mistake and inequitable conduct.  Count IV alleges a breach of the reformed Policy.  Under either theory of contract reformation – mutual mistake or unilateral mistake coupled with inequitable conduct – the facts sufficient to bring a claim were known to the Trustee no later than 2011.  Six years later, the Trust sued.  By any reasonable analogous statute of limitations, the Trust waited too long.

There is a presumption of prejudice and unreasonableness when the analogous statute of limitations is exceeded.[103]  Here, significant, material elements of the

---

[102] "Late betting or past posting is making a bet after the time when no more bets are to be taken…The term *past posting* originates from horse racing where a bugler sounds a "call to the post" just before the race begins ("post time").  This is also the signal that no more bets can be taken.  Any bets made after that time occur after or past 'the post."' *Wikipedia,* https://en.wikipedia.org/wiki/Late_betting.

[103] *Kim v. Coupang, LLC*, 2021 WL 3671136, at *3 (Del. Ch. Aug. 19, 2021); *Forman v. CentrifyHealth, Inc.,* at *9  2008 WL 1810947 (Del. Ch. Oct. 14, 2008).

28

reformation claims involve oral communications occurring as far back as 1999 and no more recently than 2011. It is unfair to any party to litigate the accuracy of such long ago conversations. Further, while the actuarial risks are a matter of debate, it is certainly arguable that the Defendants were prejudiced by collecting premiums for a Policy paying a Death Benefit of $4 million until age 100 if that Death Benefit actually extended indefinitely beyond 100.

Since the contract reformation claims are barred by laches, it follows that a claim for breach of those claims is also barred. A contract that does not exist will not support a claim for its breach.

**G.    The Equitable or Constructive Fraud Claims are Barred by Laches.**

Counts III and IV allege equitable or constructive fraud and aiding and abetting equitable or constructive fraud respectively. Count III alleges that a special relationship existed between the Defendants, through their agents Wilcock and Wetherell, and the Trust under which the Trust relied upon the Defendants to provide a suitable Policy for its needs.[104] It further alleges that the Defendants "engaged in acts, omissions, and concealments (whether innocent, negligent or willful and intentional) which involve breaches of duty, trust, and confidence" injurious to the Trust by misrepresenting the risks and disadvantages of the Policy, including

---

[104] Compl., at ⁋ 51, D.I. 1.

29

through illustrations inducing the Trust to make premium payments not required by the contract.[105] Count IV alleges that the Defendants, to the extent they are not primarily liable for equitable or constructive fraud, are liable through their agents Wilcock and Wetherell.[106] These claims were not made in the Superior Court action. Rather, they were alleged for the first time in this Court in 2021 when the Superior Court authorized the transfer of the contract reformation claims.

Obviously, if these new claims were to stand alone, untethered to the Superior Court litigation, they would be barred by laches. Even if the accrual event is the death of Mrs. Nowak in 2016, they are well beyond the analogous three-year statute of limitations for fraud.[107] But, the Trust contends these claims are timely, despite being brought for the first time in 2021, because they relate back to the original complaint in Superior Court pursuant to Chancery Rule 15(e), since they arise out of the conduct, transaction or occurrence alleged in the Superior Court action.[108]

If the Court were to accept the Trust's position, in order to be timely here, the equitable fraud claims, if originally brought in the Superior Court, would have had

---

[105] *Id.,* at ¶¶ 52-54.

[106] *Id.,* at ¶¶ 56-59.

[107] 11 *Del. C.* § 8106(a); *Lehman Brothers Holdings, Inc. v. Kee*, 268 A.3d 178, 197 (Del. 2021).

[108] Pl.'s Ans. Br., at 44, D.I. 12.

to be timely there. They would not have been. The Trust maintains that laches did not commence on the equitable or constructive fraud claims, regardless of when the fraud occurred, until the injury was knowable.[109] According to the Trust, the injury was unknowable because the Trust could not know that the Defendants representations that they would pay $4 million upon the death of Mrs. Nowak were false until the Defendants failed to make the payment.[110] This argument is simply a repackaging of the tolling argument the Court rejected when it determined that the Trust was not "blamelessly ignorant" of the Defendant's intentions. According to the Complaint, the Trust knew as early as 2010, and certainly no later than 2011, that the Defendants would not pay the $4 million Death Benefit if Mrs. Nowak died after attained age 100.[111] The Complaint alleges the Trustee faced a supposed Hobson's choice – whether to sue or conserve the Trust's resources.[112] The decision to forgo bringing suit was based on a balancing of the costs and the likelihood that Mrs. Nowak would die before attained age 100. It was not based on the lack of a viable claim. Accordingly, the equitable or constructive fraud claim as well as the aiding and abetting equitable or constructive fraud claim are barred by laches.

---

[109] Pl.'s Ans. Br., at 43., D.I. 12.

[110] *Id.*

[111] Compl., at p. 17; ⁋⁋ 24-34, D.I. 1.

[112] *See, Id.,* at ⁋⁋ 10, 34.

## V. CONCLUSION

For the reasons set out above, all claims in the Complaint are barred by laches. The Motion to Dismiss of Defendants Voya Financial, Inc. and Security Life of Denver Insurance Company is **GRANTED.** The Verified Complaint of The Olga J. Nowak Irrevocable Trust is **DISMISSED WITH PREJUDICE.**

**IT IS SO ORDERED.**

/s/ Ferris W. Wharton
Ferris W. Wharton, J.